IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **DANNY JAMES CECILE, JR.,** | ) | Case No. 20-50285 |
| | ) | |
| Debtor. | ) | |

**RESPONSE IN OPPOSITION TO MOTION OF THE DEBTOR
TO EXTEND AUTOMATIC STAY TO NON-DEBTOR ENTITY
OWNED BY DEBTOR AND NON-FILING SPOUSE**

NOW COMES First Community Bank, successor by merger to Highlands Union Bank (the "Bank"), by and through counsel, and hereby files its response and brief in opposition (the "Response") to the Debtor's *Motion to Extend Automatic Stay to Non-Debtor Entity Owned by Debtor and Non-Filing Spouse* (the "Motion") [ECF No. 2]. In support of the Response, the Bank shows the Court as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Motion and this Response pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue of this Chapter 11 case and the Motion and this Response is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in the Motion is 11 U.S.C. § 362.

**BACKGROUND**

2. On July 7, 2020 ("Petition Date"), the Debtor filed its Voluntary Petition for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code.

3.	The real property that is the subject of the Motion and this Response is owned by Perry Farms, LLC ("Perry Farms"), a Tennessee limited liability company, and is located off of Highway 67W in Mountain City, Tennessee (the "Real Property").

4.	In the Motion, the Debtor has claimed that he owns a majority interest in Perry Farms. To the contrary, all of the records to which the Bank has access, including records provided to the Bank by Mr. Cecile, indicate that the Debtor's spouse, Jennifer P. Cecile ("Mrs. Cecile") is the sole owner and member manager of Perry Farms.

*Ownership of Perry Farms*

**Perry Farms Formation Documents**

5.	Pursuant to the Articles of Organization of Perry Farms (Articles of Organization), the company officially filed for active status with the State of Tennessee Secretary of State on September 12, 2014 at 10:53 a.m. Mrs. Cecile signed the Articles of Organization as "Manager" (see Articles of Organization at Section 17). Attached hereto as **Exhibit A** is a true, accurate, and complete copy of the Articles of Organization.

6.	Also, on September 12, 2014, Mrs. Cecile executed the Operating Agreement of Perry Farms. The Operating Agreement specifically states that Mrs. Cecile made 100% of the initial capital contribution and owns 100% of the LLC units (see Operating Agreement at Section 3.1). Attached hereto as **Exhibit B** is a true, accurate, and complete copy of the Operating Agreement.

7.	The Operating Agreement specifically states that Perry Farms "shall be managed by its members". Mrs. Cecile is the sole member, and therefore Perry Farms is and has been managed solely by Mrs. Cecile.

8. The obligors provided the Operating Agreement to the Bank in connection with the Perry Farms loan applications.

**Perry Farms Loan Documents**

9. The Bank made a loan to Perry Farms, LLC evidenced by a Promissory Note dated November 3, 2014 in the original principal amount of $80,000.00 ("Note 2613"). Attached hereto as **Exhibit C** is a true, accurate, and complete copy of Note 2613.

10. Mrs. Cecile, on behalf of Perry Farms, executed and delivered that certain Deed of Trust dated November 3, 2014, and recorded November 4, 2014 in the Johnson County, Tennessee Public Registry at Book T284, Page 604 ("Deed of Trust 2613") to secure the obligations of Perry Farms under Note 2613. Attached hereto as **Exhibit D** is a true, accurate, and complete copy of the Deed of Trust 2613.

11. Mrs. Cecile signed both the Note 2613 and Deed of Trust 2613 as they relate to the Real Property as the "Member Manager" of Perry Farms, LLC.

12. The Bank made a loan to Perry Farms, LLC evidenced by a Promissory Note dated December 28, 2015 in the original principal amount of $147,000.00 ("Note 3102"). Attached hereto as **Exhibit E** is a true, accurate, and complete copy of Note 3102.

13. Mrs. Cecile, on behalf of Perry Farms, executed and delivered that certain Deed of Trust dated December 28, 2015, and recorded December 28, 2015 in the Ashe County, North Carolina Public Registry at Book 466, Page 1761 (the "Deed of Trust 3102") to secure the obligations of Perry Farms under Note 3102. Attached hereto as **Exhibit F** is a true, accurate, and complete copy of the Deed of Trust.

14. Mrs. Cecile signed both the Note 3102 and Deed of Trust 3102 as they relate to the Real Property as the "Member Manager" of Perry Farms, LLC.

**Personal Financial Statements**

15.     As recently as March 2020, the Debtor and Mrs. Cecile submitted personal financial statements to the Bank which reflect Mrs. Cecile's ownership of Perry Farms (*see* Jennifer Cecile Personal Financial Statement, page 1 and *see gen.* Danny Cecile, Jr. Personal Financial Statement). The Debtor's financial statement fails to disclose any ownership interest in Perry Farms, resulting in a conclusion that either (i) no such interest exists or (ii) Mr. Cecile signed and delivered a personal financial statement to the Bank with information omitted. Attached hereto as **Exhibit G** is a true, accurate, and complete copy of the Personal Financial Statements.

**Inconsistent and Irreconcilable Statements**

16.     In advance of this hearing, counsel for the Debtor and the undersigned were in contact regarding these issues. The Debtor provided a copy of an alternative version of an Operating Agreement for Perry Farms, dated September 15, 2014 which shows a different ownership structure (the "Conflicting Operating Agreement"). Attached hereto as **Exhibit H** is a true, accurate, and complete copy of the Conflicting Operating Agreement provided by the Debtor.

17.     In consideration of the aforementioned statements and documents, it is clear that the Debtor's claim of ownership to the Court is directly contradictory to the information Perry Farms and Mrs. Cecile provided to the Bank. Either Perry Farms and Mrs. Cecile provided false information to the Bank in connection with the Perry Farms loan applications and loan documents or the Debtor has provided false information to this Court.

18.     There is already evidence in this case that the Debtor has made other false submissions. In the Debtor's Voluntary Petition he indicated that he had completed the required credit counseling course prior to filing. [ECF Doc. 1]. Based on the Certificate of Credit Counseling he has now filed with this Court, that was not true. The Voluntary Petition was filed

on July 7, 2020 at 9:14am. The Certificate of Credit Counseling states that the course was completed on July 7, 2020 at 10:28am. The Bank had its Foreclosure Sale (as noted below) scheduled in Tennessee that same morning, July 7, 2020, at 10:30 am.

**Default by Perry Farms and Foreclosure**

19. Perry Farms defaulted on Note 2613 by failing to pay the outstanding obligations under Note 2613 on its maturity date of November 3, 2019.

20. After Perry Farms' default on Note 2613, the Bank commenced a foreclosure proceeding in Johnson County, Tennessee in accordance with Tennessee law. The substitute trustee under the Deed of Trust proceeded to schedule the foreclosure sale for July 7, 2020 (the "Foreclosure Sale").

21. In his Motion, the Debtor has asked this Court to enjoin the Foreclosure Sale and enter an order finding that the Real Property, which is not owned by Debtor, is subject to the protections of 11 U.S.C. §362(a)(l), or, in the alternative, enter an order extending the stay under the "unusual circumstances" exception to 11 U.S.C. §362(a)(l).

## ARGUMENT

22. The Bank has provided the foregoing information regarding the ownership issue and the conflicting statements of the Debtor and Mrs. Cecile for a limited purpose. That purpose is simply to disclose these concerning statements to the Court as quickly as possible after the Bank discovered them. The Bank does not believe that it is necessary to rule on the ownership issue in connection with the Motion. Rather, as discussed more fully below, the Bank submits that the Debtor's Motion should be denied, even assuming that all of the Debtor's assertions are true.

### An Administratively Dissolved Tennessee Limited Liability Company
### Still Retains Ownership of its Property During its Corporate Wind Up

23. The Debtor appears to argue that when Perry Farms became administratively dissolved, the ownership interests of Perry Farms' property automatically transferred to its members personally, thereby giving the Debtor a direct interest in the Real Property. To the contrary, in Tennessee, when an LLC has been dissolved, the LLC is required to winddown; assets and interests of the LLC may only transfer to the LLC members following payment, in full, of the company's debts. *See* Tenn. Code Ann. §§ 48-245-302, 48-245-501. Upon the dissolution of the LLC, the real estate that an LLC owns does not automatically transfer to an LLC's members in their individual capacities. Rather, the real estate remains owned by the LLC until the LLC's members take proper action to effectuate a legal transfer of title.

### The Real Property is not "Property of the Estate"
### Subject to the Automatic Stay

24. The automatic stay of 11 U.S.C. § 362(a)(3) provides protection from actions of creditors taken against or to obtain "property of the estate." If the Real Property is not property of the estate, subsection (3) will not prevent the continuation of the Foreclosure Action.

25. The nature and existence of a debtor's interest in property is determined by looking to applicable state law. *In re Moffett*, 356 F.3d 518, 521 (4th Cir. 2004) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). Once that interest has been defined, however, federal bankruptcy law determines the extent to which that interest is property of the estate. *Id*.

26. In its Motion, the Debtor attempts to argue that because Perry Farms is owned in part by the Debtor, and because the equity ownership of Perry Farms is an asset of the bankruptcy estate, the Real Property deserves protection from 11 U.S.C. §362(a)(l).

27. Simply put, and based on the Debtor's own admission, Perry Farms is the current owner of the Real Property (Motion ¶ 5), and therefore the Foreclosure Action is not against property owned by the Debtor.

### The Foreclosure Action does not Constitute a "Claim Against the Debtor" Subject to the Automatic Stay

28. The automatic stay of 11 U.S.C. §362(a)(l) prohibits the commencement or continuation of an action or proceeding against a debtor.

29. In its Motion, Debtor cites no cases in support of its proposition that the continuation of a foreclosure action for property owned by a non-debtor third party constitutes a claim against Debtor.

30. A foreclosure is an *in rem* action and by its very nature it cannot be an action against Debtor. *See In re Everchanged, Inc.*, 230 B.R. 891, 894 (Bankr. S.D. Ga 1999) (There is an "important distinction between a foreclosure, which is *in rem*, and an attempt by a creditor to enforce a deficiency judgment against the obligated Debtor, which is *in personam*. *In rem* foreclosure on non-estate property does not violate the automatic stay.").

31. Bank is not seeking to enforce any deficiency or *in personam* claim against Debtor in the Foreclosure Action and the continuation of the *in rem* Foreclosure Action is not the continuation of an action against Debtor subject to the protection of 11 U.S.C. §362(a)(l).

### The Automatic Stay Should not be Extended under the "Unusual Circumstances" Standard

32. In its Motion, Debtor cites no cases that deal with extending the stay under the "unusual circumstances" exception to *in rem* actions for property owned by non-debtor third parties. The cases cited by Debtor are wholly distinguishable because they deal with *in personam* actions by unsecured creditors.

33. Debtor relies on *A.H Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986). In that case, the court noted that the purpose of Section 362 is "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *Id* at 998, citing *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982). In its rationale to extend the stay, the court concluded that allowing the lawsuits to proceed could result in a binding judgment against the debtor and the debtor's reorganization efforts would be frustrated, if not permanently thwarted. *Id* at 1008.

34. The unusual circumstances that led to the extension of the stay in *A.H Robins* are wholly different from the present case. The continuation of the Foreclosure Action does not create a threat of an "uncontrollable scramble" for Debtor's asset because the Real Property is not an asset of Debtor. Furthermore, the Bank has a first priority lien on the Real Property and any claim of any other creditor to the Real Property is subject to and subordinate to Bank's lien.

35. Debtor also relies on the case of *In re Brier Creek Corporate Center Associates Ltd., et al.*, 486 B.R. 681 (E.D.N.C. 2013). The court in *Brier Creek* extended the stay pursuant to the "unusual circumstances exception" to non-debtor arbitration dealing with an unsecured claim that would impact the debtor's bankruptcy estate and the debtor's ability to focus its time and energy on reorganization. *Id* at 688.

36. In analyzing other cases in the Fourth Circuit, the court in *Brier Creek* articulated a "guarantor-plus" standard for the unusual circumstances exception. *Id*. at 689. "This 'unusual situation,' . . . arises when there is such identity between the debtor and the third-party defendant

that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id*. at 690, *quoting A.H Robins*, 788 F.2d at 999.

37. The present case does not meet the "guarantor-plus" standard. The Foreclosure is an *in rem* action and it will not result in a judgment against Perry Farms or Debtor.

38. If the Court exercises its jurisdiction to extend the stay under the unusual circumstances exception, it will render the most usual circumstances "unusual." *See In re Murall, Inc.* 118 B.R. 400 (Bkrtcy. S.C. 1989) (noting that extending the stay to non-debtor guarantor litigation would render usual circumstances "unusual"). There is nothing unique about a non-debtor third party facing foreclosure while the Debtor is in bankruptcy, and to find otherwise would have far reaching consequences on debtors and creditors alike.

39. Finally, there is no public interest to support an extension of the stay.

WHEREFORE, for the foregoing reasons, Bank respectfully requests that this Court enter an order confirming that the automatic stay does not extend to the Real Property, deny the Debtor's motion to extend the stay, and for such other and further relief as the Court deems just and proper.

Dated: Charlotte, North Carolina
August 6, 2020

HAMILTON STEPHENS
STEELE + MARTIN, PLLC

 /s/ Melanie D. Johnson Raubach
Melanie D. Johnson Raubach (Bar No. 41929)
525 North Tryon Street, Suite 1400
Charlotte, NC  28202
Telephone: (704) 344-1117
Facsimile:  (704) 344-1483
mraubach@lawhssm.com
*Attorneys for First Community Bank, successor by merger, to Highlands Union Bank*

{00500571.DOCX V.3 H449.026707;}    9

## CERTIFICATE OF SERVICE

    I hereby certify that on this day, the foregoing *Response and Objection to Motion of the Debtor to Extend Automatic Stay to Non-Debtor Entity Owned by Debtor and Non-Filing Spouse* was served by electronic means on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case.

Dated:  Charlotte, North Carolina
        August 6, 2020

                                                              */s/ Melanie D. Johnson Raubach*
                                                             Melanie D. Johnson Raubach

HAMILTON STEPHENS
STEELE + MARTIN, PLLC
525 North Tryon Street, Suite 1400
Charlotte, NC  28202